WALTER R. CANNON, ESQ.
Nevada Bar No. 001505
PETER M. ANGULO, ESQ.
Nevada Bar No. 003672
THOMAS D. DILLARD, JR., ESQ.
Nevada Bar No. 006270
RAWLINGS, OLSON, CANNON,
GORMLEY & DESRUISSEAUX
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Phone: (702) 384-4012
Fax:    (702) 383-0701

Attorney for Defendant
JUDGE GEORGE ASSAD

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANN CHRZANOWSKI,<br><br>        Plaintiff,<br><br>vs.<br><br>JUDGE GEORGE ASSAD, CITY OF LAS VEGAS, a political subdivision of the state of Nevada; MARSHALL R. SAAVEDRA, John Does, I-X, each individually and in their official capacities,<br><br>        Defendants. | CASE NO.:  CV-S-05-0418-RLH-PAL |

### REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT JUDGE GEORGE ASSAD'S MOTION TO DISMISS

COMES NOW, Defendant, JUDGE GEORGE ASSAD in his individual capacity, by and through his counsel of record of the law firm of RAWLINGS, OLSON, CANNON, GORMLEY & DESRUISSEAUX, and hereby replies to Plaintiff's Opposition to his Motion to Dismiss.

This Reply is made and based upon all the pleadings and papers on file herein, the

/ / /

/ / /

attached points and authorities, in conjunction with such evidence and further authorities as the court may require at the time this matter is considered.

Dated this 28 day of August, 2005.

RAWLINGS, OLSON, CANNON,
GORMLEY & DESRUISSEAUX

By: _____
WALTER R. CANNON
Nevada Bar No. 001505
PETER M. ANGULO, ESQ.
Nevada Bar No. 003672
THOMAS D. DILLARD, JR., ESQ.
Nevada Bar No. 006270
9950 W. Cheyenne Avenue
Las Vegas, Nevada 89129

Attorneys for Defendant
JUDGE GEORGE ASSAD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On July 21, 2005, Defendant Judge George Assad ("Judge Assad") moved to dismiss all claims against him in his individual capacity because he is immune from the suit as a matter of law due to the absolute immunity doctrine. Plaintiff has now opposed the motion on August 12, 2005. Plaintiff has argued that absolute immunity does not attach because the complained of conduct was taken in the absence of all jurisdiction. Plaintiff in doing so attached affidavits from Plaintiff and her boyfriend, Joshua Madera. The affidavits, however, do not add any additional allegations that were not set forth by Plaintiff in her Complaint and therefore are not pertinent to the issue of whether the Complaint itself states a valid cause of action for which there is no immunity. Plaintiff also does not request the opportunity to amend; accordingly, she rests on her pleadings in the original complaint and the points and authorities in her opposition to withstand the motion to dismiss.

## II.

## LEGAL ARGUMENT

**A.   The Complaint Does Not Allege Facts that Judge Assad Acted in the Clear Absence of Jurisdiction to Pierce His Absolute Immunity from Suit.**

Plaintiff acknowledges that Judge Assad possess absolute immunity per case law except where he acts in the clear absence of jurisdiction. (Opposition pg. 5 lines 5-6)(*citing* Stump v. Sparkman, 435 U.S. 349 (1978)). Plaintiff simply argues, however, that her factual allegations demonstrate that Judge Assad did indeed act in the clear absence of jurisdiction on March 31, 2003 when he allegedly held Plaintiff in custody when she voluntarily appeared on behalf of Mr. Madera in a hearing for a case pending before Judge Assad. Plaintiff, in so doing, does not understand, as defined by controlling case law, the meaning of an act in the clear absence of jurisdiction. The cases cited by Plaintiff provide no support for their position. Plaintiff's argument concerning the facts that she engaged in no inappropriate behavior before the judge is likewise of no moment. Examining the facts pled in a light most favorable to Plaintiff, she at best alleges that Judge Assad gave an order of questionable authority. The well established law

makes clear that a judge possess absolute immunity from all decisions made within his authority and those of questionable authority as well.

Plaintiff cites the case of Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978) in support of her position. There, the defendant, a traffic court judge sent a deputy sheriff out to purchase some coffee from a coffee vendor during a break in an evening session of traffic court. Both judge and deputy sheriff tasted the coffee and concluded it was "putrid." On the defendant judge's orders, the coffee vendor was handcuffed, brought before the judge in his chambers, and the judge ordered that he remained handcuffed while he subjected him to "20 minutes" of the judge "screaming at him, threatening him and his livelihood ... and thoroughly scaring him." Id. at 53. After his first release, the vendor on the judge's order was again brought before the judge for an abbreviated, but similar encounter.

The reported case, however, does not even address the immunity issue, presumably because the judge was willing to concede his actions were not "judicial acts," but dealt in large part with the propriety of a $60,000 punitive damages jury award for the coffee vendor. Therefore, the case does not even pertain to the scope of judicial immunity. Moreover, the facts are plainly distinguishable because the judge ordered the Marshall to go outside of the court and take into custody a person that had no case before the court and did not voluntarily appear before the judge. This plainly was not a normal judicial function and the confrontation did not arise from the judge acting in his official capacity. The same is just not true with the instant case.

Plaintiff also relies upon the case of Gregory v. Thompson, 500 F.2d 59 (9th Cir. 1974) that involved a judge coming down from off the bench and committing an assault on an individual who refused to leave the courtroom. In fact, the judge threw the plaintiff to the floor, jumped on him and began beating him. Id. at 61. The judge admitted that he could have and should have contacted the sheriff's office to remove the plaintiff. Id. In setting forth the proper scope of judicial immunity, the Court stated in Gregory:

> A seemingly impregnable fortress in American jurisprudence is the absolute immunity of judges from civil liability for acts done by them within their judicial jurisdiction. Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The general rule, laid down over a century ago, is that judges are immune from suit for judicial acts within and even in excess of their jurisdiction even if those acts were done maliciously or corruptly; the only exception to this sweeping

cloak of immunity exists for acts done in 'the clear absence of jurisdiction." (citations omitted).

Id. at 62. The court then went on to conclude that immunity did not protect the judge from the assault because he was not engaged in a judicial act. In so doing, the Court held:

> . . . The decision to personally evict someone from a courtroom by the use of physical force is simply not an act of a judicial nature, and is not such as to require insulation in order that the decision be deliberately reached. A judicial act, within the meaning of the doctrine may normally be corrected on appeal. But when a judge exercises physical force in a courtroom, his decision is not amenable to appellate correction.
>
> . . .
>
> . . . [H]ere, Judge Thompson could have summoned a sheriff to escort [the plaintiff] from the courtroom; indeed, he concedes that is what he should have done. Had he done so, and had the sheriff assaulted Gregory, the sheriff would not have been entitled to claim absolute immunity but only the defense that he was acting in good faith. Judge Thompson's choice to perform an act similar to that normally performed by a sheriff or bailiff should not result in his receiving absolute immunity for this act simply because he was a judge at the time.

Id. at 64-65.

Thus, the Ninth Circuit generally concluded that immunity attaches not to the title of the person committing the act but the function of the act. See Kalina v. Feltcher, 522 U.S. 118, 127, 118 S. Ct. 502 (1997)(holding immunity decisions are based on "the nature of the function performed, not the identity of the actor who performed it."). In other words, the judge in Gregory acted as though he were a law enforcement officer and thus only was protected to the same extent that a law enforcement officer would be protected in like circumstances, by qualified immunity. The Ninth Circuit indeed suggested that had the judge did what he was supposed to have done–and had the sheriff or bailiff remove the plaintiff–then he would have been acting in a judicial function and been protected by absolute immunity.

In this case, Plaintiff entered Judge Assad's courtroom of her own volition and interacted with him as he sat on the bench and called her boyfriend's case to the bar. The factors relevant in determining whether an act is judicial "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362, 98 S.Ct. at 1107. In Stump v. Sparkman, the Supreme Court even held that a judge's ex parte approval of a young

woman's sterilization was a judicial act performed within the apparent scope of the court's broad, general jurisdiction. Id. at 357-64, 98 S.Ct. at 1105-09. If the Stump factors are present, then the judge has immunity "however erroneous the act may have been, and however injurious in its consequences it may have proven to the plaintiff." Cleavenger v. Saxner, 474 U.S. 193, 106 S.Ct. 496, 500 (1988).

A case somewhat similar to the alleged facts in this case is McAlester v. Brown, 469 F.2d 1280 (5th Cir. 1972). This Fifth Circuit Court of Appeals case is more than instructive in the instant case as the Supreme Court cited it approvingly when it defined the characteristics of "judicial acts" in the seminal case of Stump v. Sparkman, supra. In McAlester, a judge inexplicably lost his temper with an elderly and partly deaf man that came before him. The elderly plaintiff had come with his wife to deliver fresh clothing to their son (who was a pre-trial detainee due to stand trial before the judge at a later date). The judge held in contempt the plaintiff and ordered him to be incarcerated. The judge was still held to possess immunity for jailing the man. The Fifth Circuit Court of Appeals held in McAlester that "four factors . . . when taken together, compel the conclusion" that a judicial act was involved:

> (1) the precise act complained of, use of the contempt power, is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

469 F.2d at 1282.

The McAlster case again is not only a significant precedent here because the Supreme Court drew on it when it decided Stump but also because the four factors enunciated by McAlster was adopted verbatim by the Ninth Circuit Court of Appeals in Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986)(citing McAlester, 469 F.2d at 1282) and reaffirmed recently in Meek v. County of Riverside, 183 F.3d 962, 967 (9th Cir. 1999).

The four factors demonstrate in this case–just as they did in McAlster–that the allegations in the complaint succumb to Judge Assad's absolute immunity from suit. First, the judge has authority under his contempt power to order the bailiff to take a person into custody and this is a traditional and normal judicial function. Second, Plaintiff alleges all the complained of acts to

have occurred inside the municipal court. The facts are uncontroverted that Plaintiff presented herself in front of the judge without compulsory means in his courtroom. Third, the encounter between Plaintiff and Judge Assad arose out of the Madera case pending before Judge Assad and called for a hearing. Fourth and finally, the confrontation between Judge Assad and Plaintiff arose directly and immediately out of Plaintiff's visit to Judge Assad acting in his official capacity as a Las Vegas Municipal Court Judge. Regardless of Plaintiff's contentions that she did nothing worthy of being taken into custody, the complained of act was judicial in nature and Judge Assad is thus absolutely immune.

### B. Plaintiff Has Not Stated a Valid State Law Claim for Relief Because Judge Assad Has Immunity for the State Law Claims as Well as the Federal Claims under the Doctrine of Absolute Immunity.

Plaintiff's opposition recognizes that Nevada recognizes the same immunity that the federal courts do for judges performing judicial acts even with mere colorable legal authority. (Opposition pg. 6 lines 14-16)(*citing* State of Nevada v. Second Judicial District Court (Ducharm), 118 Nev. 609, 55 P.3d 420 (2003). Plaintiff suggests generally, however, that there is no discretionary immunity under Nevada law at all for any intentional tort. However, Judge Assad did not move for a dismissal based on the discretionary function immunity of NRS 41.032.[1] Absolute immunity is recognized on Nevada under common law principles as opposed

---

[1] Nevada Revised Statute § 41.032 (entitled Acts or omissions of officers, employees and immune contractors) in pertinent part, holds:

... **[N]o action** may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the state or any of its agencies or political subdivisions which is:

. . .

    2.    Based upon the exercise or performance or the failure to exercise or <u>perform a discretionary function or duty</u> on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor or any of these, whether or not the discretion involved is abused.

(emphasis added). The statute does not limit the statute to just negligence claims for relief. The statute itself, with the language of "no action," suggests that it applies to all types of theories of recovery.

to any codified immunity of Title 41 of the Nevada Revised Statutes. See Mirin v. Justice of the Supreme Court of Nevada, 415 F. Supp. 1178, 1190 (D. Nev. 1976); Ducharm, at 615, 55 P.3d at 423-24. Plaintiff's position that Judge Assad has no immunity because he allegedly caused Plaintiff to be falsely arrested (an intentional tort) is just plain inconsistent with Plaintiff's acceptance that judges ordinarily enjoy absolute immunity in Nevada.

What is more, Plaintiff's position that there is no discretionary immunity for all intentional tort claims is not well taken either. Plaintiff cites for this proposition that there is no immunity at all or any intentional tort the case of Jimenez v. Department of Human Resources, 113 Nev. 356, 935 P.2d 274 (1997). The principal problem with that is that case was specifically withdrawn less than three months after it was issued by the Nevada Supreme Court in 113 Nev. 735, 941 P.2d 969 (1997). Secondly, accepting Plaintiff's position would mean that every judge in Nevada would be subject to a false arrest claim if the judge ordered a person arrested as a contempt sanction without probable cause and would have no liability for any conspiracy charge. There is no case law in Nevada that will support this near universal stripping of immunity from judicial officials.

The Nevada Supreme Court has also found discretionary immunity to apply to intentional tort claims for relief. A year after withdrawing Jimenez, the Nevada Supreme Court decided Ortega v. Reyna 114 Nev. 55, 953 P.2d 18 (1998). There the Nevada Supreme Court on review of a summary judgment motion, determined that the decision to stop a motorist was discretionary and the decision to arrest a motorist was discretionary. Id. at 62 953 P.2d at 23. The plaintiff brought claims against the defendants for the intentional torts of false arrest, false imprisonment, intentional infliction of emotional distress and malicious prosecution. Id. at 56, 953 P.2d at 19. The Court, upon the summary judgment motion, had to take the facts most favorable to Ms. Ortega when they decided that case and she testified that she did not make an illegal turn and also did not refuse to sign the citation. Id. at 59, 953 P.2d at 20. Nonetheless, Trooper Reyna was still afforded immunity for his decision because the decisions that he reached as to probable cause were made upon personal deliberation and discretion. Id. at 62, 953 P.2d at 23. Thus,

even if he abused his discretion because his seizure was not supported by probable cause, he was immune from the discretionary acts of conducting a traffic stop, issuing a citation and then making an arrest. The Court did not find the fact that the causes of action were for intentional torts problematic at all when deciding that discretionary immunity attached.

In addition, the Ninth Circuit in Carey v. Nevada Gaming Control Board, 279 F.3d 873 (9th Cir. 2002) cited Ortega upon affirming a finding immunity for false imprisonment and battery causes of action. The plaintiff alleged that the agent arrested him without probable cause and a battery occurred when the agent handcuffed him and detained him against his will. Id. at 878. The Ninth Circuit affirmed the decision of this District Court of Nevada in dismissing the state law claims based on NRS 41.032 because the arrest "was not a prescribed act; rather it was an act resulting from the exercise of his own discretion." Id. Interestingly, the Ninth Circuit (based on the same acts) found the arrest violative of the Fourth Amendment and also found that there was no qualified immunity for the arrest when deciding the federal claims pursuant to 42 U.S.C. § 1983. Id. at 881-82. Hence, the state law claim were found lacking because there was no evidence to pierce the hardy discretionary immunity defense despite the court finding facts in the record that could pierce the qualified immunity doctrine applicable to the civil rights claims. Once again, the fact that the state law causes of action were for false arrest and battery was of no consequence.

Recently, the Honorable Judge Larry Hicks of the U.S. District Court of Nevada also found discretionary immunity appropriate when dismissing state law claims for wrongful death and intentional infliction of emotional distress involving facts suggesting that the defendant officers unjustifiably used deadly force on the decedent in Herrera v. Las Vegas Metro. Police Dept., 298 F. Supp.2d 1043 (D. Nev. 2004). Clearly, the claim that the police officer unlawfully discharged his firearm at a person resulting in that person's death is an intentional tort theory of recovery for battery. Id. at 1053-54. Nonetheless, the Court held that there was discretionary immunity for the claim by stating "Defendants' strategy for approaching the Decedent, the moment by moment decisions they made throughout the interaction, and their ultimate use of lethal force against [the decedent] were, as a matter of law, discretionary acts." Id. at 1054.

1   Plaintiff's opposition to the motion to dismiss the state law claims against Judge Assad is
2   deficient on two levels. First, absolute immunity for judges in Nevada is independent of the
3   discretionary immunity statute of NRS 41.032. Secondly, the case law makes clear that a state
4   official still has discretionary immunity for alleged false arrest claims.

## III.

## CONCLUSION

IN ACCORDANCE WITH THE FOREGOING, the Complaint fails to state a valid claim for relief for any pled federal or state law causes of action. Judge Assad has absolute immunity for all claims for relief because the facts alleged make clear that he was participating in a judicial act and was also not acting in the clear absence of any jurisdiction. The entire case, therefore, fails to state any valid cause of action and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

RESPECTFULLY SUBMITTED this 29 day of August 2005.

RAWLINGS, OLSON, CANNON,
GORMLEY & DESRUISSEAUX

By: _____
WALTER R. CANNON
Nevada Bar No. 001505
PETER M. ANGULO, ESQ.
Nevada Bar No. 003672
THOMAS D. DILLARD, JR., ESQ.
Nevada Bar No. 006270
9950 W. Cheyenne Avenue
Las Vegas, Nevada 89129

Attorneys for Defendant
JUDGE GEORGE ASSAD

## CERTIFICATE OF MAILING

**I HEREBY CERTIFY** that I am an employee of RAWLINGS, OLSON, CANNON, GORMLEY & DESRUISSEAUX and that service of the foregoing, **REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT JUDGE GEORGE ASSAD'S MOTION TO DISMISS**, was made on the 29th day of August, 2005, by depositing a true copy of same in the United States mail, with postage prepaid, at Las Vegas, Nevada, addressed to the following at their last known address:

Cal J. Potter, III, Esq.
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada 89102
Attorney for Plaintiff

Bradford R. Jerbic, Esq.
Phillip R. Byrnes, Esq.
CITY ATTORNEY FOR THE CITY OF LAS VEGAS
400 East Stewart, 9th Floor
Las Vegas, Nevada 89101

Thomas D. Beatty, Esq.
LAW OFFICES OF THOMAS D. BEATTY
601 Bridger Ave.
Las Vegas, Nevada 89101
Attorney for Defendant Saavedra

Allen Lichtenstein, Esq.
ACLU of Nevada
3315 Russell Road, No. 22
Las Vegas, Nevada 89120

/s/ Krisanne Steck-Barabile
An Employee of RAWLINGS, OLSON,
CANNON, GORMLEY & DESRUISSEAUX