ORIGINAL

2005 SEP 16 P 3:39

MJ

**CAL J. POTTER, III, ESQ.**
Nevada Bar No. 1988
**JOHN C. FUNK, ESQ.**
Nevada Bar No. 9255
**POTTER LAW OFFICES**
1125 Shadow Lane
Las Vegas, Nevada 89102
(702)385-1954

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

✦✦✦

ANN CHRZANOWSKI,

Plaintiff,

v.

JUDGE GEORGE ASSAD, CITY OF LAS, VEGAS, a Political Subdivision of the State of Nevada; MARSHALL R. SAAVEDRA; JOHN DOES I-X, each individually and in their official capacities,

Defendants.
______________________________/

**CASE NO.: CV-S-05-0418-RLH-PAL**

**OPPOSITION TO DEFENDANT RAUL SAAVEDRA'S MOTION TO DISMISS**
**(Oral Argument requested)**

COMES NOW, Plaintiff, ANN CHRZANOWSKI, by and through her attorneys, CAL J. POTTER, III, ESQ., and JOHN C. FUNK, ESQ., of the POTTER LAW OFFICES and opposes the Defendant R. Saavedra's Motion to Dismiss.

///

///

15

POTTER
LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 * Fax (702) 385-9081

This Opposition is made and based upon the Complaint on file herein and the Points and authorities attached hereto.

DATED this 16th day of September, 2005.

POTTER LAW OFFICES

By [signature]
CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
JOHN C. FUNK, ESQ.
Nevada Bar No. 9255
1125 Shadow Lane
Las Vegas, Nevada 89102
Attorneys for Plaintiff

POTTER
LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 * Fax (702) 385-9081

## POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Defendant, Raul Saavedra, concedes in his motion to dismiss that he is an employee of the City of Las Vegas.[1] As a City Marshall he is a peace officer of the State of Nevada he is entitled to no more than qualified immunity pursuant to Saucier v. Katz, 121 S.Ct. 2151, 150 L.Ed.2d 272 (U.S. 2001). Moreover, he is not entitled to qualified immunity because his arrest and detention were made without probable cause. [2] Indeed, Ann Chrzanowski, was not a party to

---

[1] The Defendant, Raul Saavedra argues inter alia, that he is a Las Vegas City Marshall and that his actions in an official capacity are the same as the claim against City of Las Vegas. See, Opposition to Redundancy argument infra.

[2] Municipal Court is a Court of record and Plaintiff has been informed that a tape recording exists from the proceeding in question. Formal discovery has not commenced and Plaintiff has been informed that a copy of the tape of the proceeding will not be provided without an order from the Court.

any action in the traffic court, she was not disruptive or in contempt of the Court, nor has she committed a crime.

Likewise Judge Assad's acts were utter vires because he did not have any jurisdiction over Ann Chrzanowski. The Judge was holding Ann Chrzanowski prisoner until Joshua Madera, the violator of telephone decorum, came to court.

**II.**

**FACTS**

Ann Chrzanowski lived with Joshua Madera in Las Vegas, Nevada on or about March 28, 2003. At said time Joshua Madera called the Municipal Court and in Las Vegas in reference to a traffic citation (See, Affidavit of Ann Chrzanowski, attached hereto as Exhibit 1 and Affidavit of Joshua Madera, attached hereto as Exhibit 2 incorporated herein by reference). Ms. Chrzanowski overheard Mr. Madera say, "You do not have to talk to me like a child. I'm not your kid." Ms. Chrzanowski also heard Mr. Madera ask for the person's name and her supervisor's name. Mr. Madera then hung up the phone.

Ms. Chrzanowski then agreed that she would call the Court and was advised that she would be allowed to appear for Mr. Madera as long as she did not have any warrants. (See, Exhibit 1).

On or about March 31, 2003, at approximately 10:30 a.m., Mr. Chrzanowski appeared at the Las Vegas Municipal Court and was told to appear at the 3:30 p.m. session. Ms. Chrzanowski appeared at the Court at approximately 2:00 p.m. and was told that she would have to see the Judge. (See, Exhibit 1; Affidavit of Ann Chrzanowski). Judge Assad took the bench and when he called Mr. Madera's name Ms. Chranowski approached the microphone and

POTTER
LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 * Fax (702) 385-9081

tole the judge that Mr. Madera was starting a new job and she was making an appearance on his behalf (See, Exhibit 1).

At the time the Judge alleged that Mr. Madera had threatened a customer case representative. Ms. Chrzanowski told the Judge that she did not recall hearing any threats, but did recall hearing Mr. Madera asking for the name of the person and the name of her supervisor. Judge Assad then told Ms. Chrzanowski that she would be held until Mr. Madera came to court. Thereafter, Ms. Chrzanowski was held for over two (2) hours in a holding cell until Mr. Madera was brought to court by another City Marshall. (See, Exhibit 2; Affidavit of Joseph Madera)

Mr. Madera confirmed that he was handcuffed and arrested and taken by police cruiser to Municipal Court. When Mr. Madera arrived at court he was given a continuance and released from custody. Similarly, Ann Chrzanowski was also released from custody after Mr. Madera appeared before Judge Assad. (Id. Exhibit 2)

POTTER
LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 * Fax (702) 385-9081

## III.

## ARGUMENT

## NONE OF THE DEFENDANTS ARE ENTITLED TO JUDICIAL IMMUNITY

### Standard For Motion to Dismiss

The seminal case on judicial immunity is Stump v. Sparkman, 435 U.S. 349 (1978). Wherein the Court held that a Judge may be liable in damages only when he acts in the "clear absence of all jurisdiction." In the case at hand, Judge Assad was punishing Ann Chrzanowski for the telephone conversation that her boyfriend, Joshua Madera had with an employee of the court.

Moreover the trial court must accept all allegations of material fact as true and construed in the light most favorable to the nonmoving party. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Similarly a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

## ABSOLUTE IMMUNITY DOES NOT PROTECT CRIMINAL ACTS

Clearly the Marshall as a peace officer has his duties codified at NRS.289.150 sets forth that

The following persons have the powers of a peace officer:

(2) Marshalls, . . . of cities and towns . . .

(4) The bailiffs of the Municipal Courts whose duties require them to carry weapons and make arrests.

In addition, the United States Supreme Court in Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872) long ago held that judicial immunity is not absolute. A judge lacks immunity where he acts in the "clear absence of all jurisdiction."

The Ninth Circuit, in Ashelman v. Pope, 793 F.2d 1072 (9th Cir. 1986) noted that the question centers upon whether the judge was acting clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction. In the case at hand Judge Assad was investigating either rude and/or threatening behavior by Joshua Madera. He illegally took the Plaintiff into custody to force Josh Madera to come to Court to investigate and confront Madera's telephone conduct which was clearly outside of the Courtroom.

The Ninth Circuit has made it quite clear that judicial immunity from civil liability

POTTER LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 • Fax (702) 385-9081

should not be "affected by the motives with which their judicial acts are performed." Hence, Judge Assad may have had the best intentions in protecting his staff from rude or threatening phone calls. However, the Judge should have called the police and reported the threatening behavior. More importantly the Judge and the Marshall's ultimate behavior in taking Ann Chrzanowski into custody when she was not a party, nor had she been disruptive in the Courtroom. Ms. Chrzanowski was taken prisoner because her imprisonment would force Josh Madera to come down to the Courthouse.

In Meek v. County of Riverside, 183 F.3d 962 (9th Cir. 1999) the Ninth Circuit reiterated that there are two situations in which judges are not absolutely immune from liability arising out of official conduct. "First, a judge is not immune from liability for non-judicial actions, ie. actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

It should be noted that in Meeks, supra. Judge Brunetti recognized that actions which are administrative rather than judicial in nature are not immune. (citing, Mireles v. Waco, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) and Schucker v. Rockwood, 846 F.2d 1202 (9th Cir. 1988). Judge Brunetti that employment decisions "may be essential to the very functioning of the courts," they are not the type of decision that traditionally have been regarded as judicial acts meriting absolute immunity. The Court further noted that there was no principled reason for according judges absolute immunity for administrative personnel decisions when executive branch officials are not accorded absolute immunity for administrative personnel decisions.

The Meek court also noted that in Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981) that holding a contempt proceeding and ordering plaintiff incarcerated were not judicial acts where controversy that led to incarceration did not center around any matter pending before the judge,

POTTER
LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 • Fax (702) 385-9081

but around domestic problems of plaintiff's former wife who worked at the Courthouse.

**Derivative Immunity**

The Defendant Marshall recognizes that "quasi judicial immunity" does not protect all actions taken as part of the judicial process. Certainly if Judge Assad had told the Marshall to take Ann Chrzanowski outside of the Courtroom and shoot her the defendant could not argue that, "I'm just following orders."

The Defendant Marshall, relies upon Valdez v. City and County of Denver, 878 F.2d 1285, 1287 (10th Cir. 1989) for the doctrine of guasi-judicial immunity. It should be noted that in Valdez, *supra.* the spectator was arrested for being disruptive in the Judge's Courtroom by yelling "Bullshit." Ms. Chrzanowski was not disruptive nor did she use profanity.

It should also be noted that Ms. Chrzanowski could have been escorted from the Courtroom and could have been asked to call Josh Madera, but neither the Judge nor the Marshall had a right to handcuff and lock Ann Chrzanowski in a cell for over two hours. It should be noted that at one point after this incident Judge Assad has stated that he never intended for Defendant Saavedra to hold Ms. Chrzanowski as a prisoner. The record has not been developed at this time to determine what position Judge Assad is taking at this time.

In the case at hand, Ann Chrzanowski was not a losing party. She was not a party at all. In Coverdell v. Dept. of Social & Health Services, 834 F.2d 758 (9th Cir. 1987) the Ninth Circuit was looking at a CPS order that had become final and allowed the social worker to pick-up a new-born child. In contrast, in the case at bar there is no written order. At this stage of the proceeding it is unclear whether Judge Assad intended Ms. Chrzanowski to be taken hostage handcuffed and placed in a holding cell.

It is well settled law that officers have only qualified immunity for the manner in which

POTTER
LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 * Fax (702) 385-9081

they choose to enforce the Court order. See, Richman v. Sheahan, 270 F.3d 430, 435 (7th Cir. 2001), cert. denied, 122 S.Ct. 1439, 152 L.Ed.2d 383 (U.S. 2002).

**Claims Against Marshall Saavedra**

It is well-settled that pursuant to Monroe v. Pope, 365 U.S. 167 (1961) and its progeny that an officer who, acting under color of state law, commits an act directly resulting in a constitutional deprivation is liable for damages under § 1983.

Likewise it is axiomatic that there is no respondeat superior for liability pursuant to 42 U.S.C.1983. See, Palmer v. Sanderson, 9 F.3d 1433 (9th Cir. 1993). Actions against Municipal defendants were authorized by Monell v. Department of Social Services, 436 U.S. 658 (1978). Moreover, when the officer's conduct is "inextricably intertwined" the Marshall's action is the basis for Monell liability against the city. See, Generally, Hushey v. City of San Jose, 204 F.3d 893 (9th Cir. 2000).

**No Heightened Pleading**

By footnote, Defendant Saavedra claims that there is a heightened pleading standard for civil rights conspiracies. This motion is contrary to Leatherman v. Tarrant County, 507 U.S. 163 (1993) wherein the Court held that there is no "heightened pleading requirement" for civil rights cases. See also, Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979) for its definition of a civil conspiracy. See also, Hafner v. Brown, 983 F.2d 570 (4th Cir. 1992)(Conspiracy could be proven by circumstantial evidence).

**State Claims**

Pursuant to NRS 41.032 the State of Nevada waives its immunity. Pursuant to NRS 41.032, the State reserves its immunity for officials acting in a discretionary manner. In Travelers Hotel v. City of Reno, 103 Nev. 343, 741 P.2d 1353 (1987) the Court defined

POTTER
LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 • Fax (702) 385-9081

POTTER
LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 * Fax (702) 385-9081

discretionary act as that which requires the exercise of personal deliberation, decision and judgment. In contrast a ministerial act is an act performed by an individual in a prescribed legal manner in accordance with the law, without regard to or the exercise of, the judgment of the individual.

NRS 41.032 does not protect Marshall Saavedra from liability on an individual basis for criminal or intentional wrongs. (See, State Dept. of Human Resources v. Jimenez, 113 Nev. 356, 935 P.2d 274 (1997) rev. on other grounds; holding that the state can be held liable for the intentional torts of its employees provided that those torts are committed within the course and scope of employment.

## IV.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests, this Honorable Court deny the Defendant's Motion to Dismiss.

DATED this 16th day of September, 2005.

POTTER LAW OFFICES

By [signature]

CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada 89102
Attorney for Plaintiffs

## CERTIFICATE OF MAILING

Pursuant to FRCP 5(b), I certify that I am an employee of POTTER LAW OFFICES, and that, on this date, I deposited for mailing at Las Vegas, Nevada, a true copy of the **PLAINTIFF'S OPPOSITION TO DEFENDANT RAUL SAAVEDRA'S MOTION TO DISMISS** addressed to:

Thomas D. Beatty, Esq.
Law Offices of Thomas D. Beatty
601 Bridger Ave.
Las Vegas, Nevada 89101
Attorney for Defendant
Marshall R. Saavedra

Walter Cannon, Esq.
Thomas Dillard, Esq.
Rawlings, Olson, Cannon,
Gormley & Desruisseaux
9950 West Cheyenne
Las Vegas, Nevada 89129
Attorneys for Defendant
Judge George Assad

Phillip R. Byrnes, Esq.
Deputy City Attorney
City of Las Vegas
400 East Stewart, 9th Floor
Las Vegas, Nevada 89101
Attorneys for Defendant
City of Las Vegas

DATED this 16th day of September, 2005.

An Employee of Potter Law Offices

POTTER
LAW OFFICE
1125 Shadow Lane
Las Vegas, Nevada 89102
(702) 385-1954 * Fax (702) 385-9081

**EXHIBIT 1**

# AFFIDAVIT OF ANN CHRZANOWSKI

State of Nevada}
} ss:
County of Clark}

Ann Chrzanowski, having been duly sworn, hereby deposes and declares as follows:

1. I am a resident of Clark County, Nevada, over eighteen (18) years of age and competent in all respects to file this affidavit.

2. On or about March 28, 2003, I was with Joshua J. Madera when he called the Municipal Court in reference to a traffic citation.

3. I heard him ask someone named Debbie, the customer care representative, what he needed to do on or before March 31, 2003 to get a continuance for his court date concerning the citation.

4. I overheard Mr. Madera, say "You do not have to talk to me like a child. I'm not your kid." I also heard him ask for the person's name, extension and the supervisor's name and extension. He was given the name and extension of the person he was speaking to. Mr. Madera then stated that someone else would handle the matter for him, said good-bye and hung up

5. Mr. Madera and I then agreed that I would call the Court. I spoke to someone at the Court who told me that I could appear for Mr. Madera as long as he did not have any warrants or a court date.

6. On March 31, 2003, at approximately 10:30 a.m., I arrived at Court. I was told that I could appear at the 3:30 p.m. session. I entered the courtroom at approximately 2:00 p.m. When Mr. Madera's name was called by a court official I told him I was appearing for Mr. Madera. He told me that I would have to see the Judge.

7. When the Judge (George Assad) was on the bench and called Mr. Madera's name I

answered and approached the microphone. Judge Assad asked me where Mr. Madera was.

8. I said that I was appearing for him because Mr. Madera was starting his first day at his new job.

9. Judge Assad then said that Mr. Madera needs to be in the courtroom. The Judge alleged that Mr. Madera threatened a customer care representative with bodily harm.

10. I told the Judge that I don't recall hearing any threats. I do recall Mr. Madera asking for the person and her supervisor's names and extensions. I recounted my phone conversation with the court representative whose name I did not know.

11. Judge Assad then told me that I would be held until Mr. Madera came to court. He told me to go with the Marshall and to call Mr. Madera. I followed the Marshall to a room where I telephoned Mr. Madera and told him what the Judge said to me. Mr. Madera asked to speak to the Marshall. I overheard the Marshall say to Mr. Madera, "I don't know. I'm just following orders. All I know is that you have to get your butt down here." The Marshall then hung up and told me to put my hands behind me. I was then handcuffed and taken to the holding cell. I remained handcuffed.

12. At approximately 4:15 p.m. the Marshall asked me for Mr. Madera's cell phone number. At approximately 4:45 I banged on the door. Another Marshall came. I told him I needed to call work. He said I already had my one phone call.

13. At approximately 5:45 p.m. I was released and allowed to call my job.

14. Because I missed a day of work I asked for some verification that I had been held in custody. All I was given was the attached Court Appearance Verification. On my way out of Court I saw Mr. Madera who told me that all that happened when he saw the Judge was that he was given a continuance in his case concerning two traffic tickets.

15. Further affiant sayeth naught

Ann Chrzanowski

Subscribed and sworn before me this 21st day of May 2003.

Notary Public for ~~said county~~ and state.

MYRA L. MACK
Notary Public, State of Nevada
Appointment No. 99575451
My Appt. Expires Aug. 2, 2003

**EXHIBIT 2**

**AFFIDAVIT OF JOSHUA MADERA**

State of Nevada}
} ss:
County of Clark}

Joshua Madera, having been duly sworn, hereby deposes and declares as follows:

1. I am a resident of Clark County, Nevada, over eighteen (18) years of age and competent in all respects to file this affidavit.

2. On March 31, 2003, I asked Ann Chzanowski to go to Las Vegas Municipal Court in my behalf to as for a continuance to allow me more time to pay traffic fines that were due by 5:30 p.m. on March 31, 2003. I had no warrants.

3. Sometime early that afternoon, Ms. Chzanowski telephoned me and told me that she was being held in custody, handcuffed and in a holding cell until I arrive at court.

4. I told her that I couldn't come immediately because it was my first day at my new job and that I did not have any transportation.

5. At approximately 4:50 p.m. I received a phone call from a City Marshall who told me that I would have to accompany him to Court.

6. At approximately 5:00 p.m. I met the Marshall at the Chevron station on Town Center Drive and Charleston Blvd. He handcuffed me and put me in his cruiser. As we were traveling to the courthouse the Marshall told me that he knew I had no warrants, but that Judge Assad wanted to see me and that Ann Chzanowski was being held in custody until I arrived.

7. When I finally appeared before the Judge he gave me a payment schedule for my traffic fines and then said I was free to go. Then Ann came out from the back accompanied by a Marshall. She told me that she had been held cuffed in a holding cell since she called me earlier that day.

8. I was taken into custody, without an arrest and without a warrant because of traffic fines that were not yet due. Ann Chzanowski was kept as a hostage until my arrival in court.

9. Further affiant sayeth naught

Joshua Madera

Subscribed and sworn before me this 30th day of May 2003.

Notary Public for said county and state.

