THOMAS D. BEATTY, Esquire
Law Offices of Thomas D. Beatty
601 Bridger Avenue
Las Vegas, NV 89101
Telephone: (702) 382-5111
Facsimile: (702) 382-2892
Attorneys for Defendant
Marshal R. SAAVEDRA

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANN CHRZANOWSKI, | |
| Plaintiff, | CV-S-05-0418-RLH-PAL |
| vs. | |
| JUDGE GEORGE ASSAD, CITY OF LAS VEGAS, a Political Subdivision of the State of Nevada; Marshall R. SAAVEDRA, JOHN DOES, I-X, each individually and in their official capacities, | DEFENDANT R. SAAVEDRA'S REPLY IN SUPPORT OF MOTION TO DISMISS |
| Defendants. | |

I.   Introduction and Summary of Argument.

The Complaint in the case at bar arises out of Plaintiff's physical attendance and appearance before a Las Vegas Municipal Court Judge when her boyfriend's traffic case was on calendar, was called, and she appeared in his stead.

The Plaintiff's Complaint specifically alleges that when Plaintiff went to Las Vegas Municipal Court to seek a continuance for her boyfriend's traffic case, she was told she would have to appear before Las Vegas Municipal Court Judge George Assad. Complaint, ¶¶ 10-12. She then appeared before Judge Assad who told her that Mr. Josh Madera (her boyfriend) would himself have to personally appear because he had threatened a customer care representative. Complaint, ¶ 12.

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

Page 1 of 18

Plaintiff's Opposition to Defendant SAAVEDRA's Motion to Dismiss continues the same allegations:

> Judge Assad took the bench and when he called Mr. Madera's name Ms. Chranowski [sic; Chrzanowski] approached the microphone and tole [sic; told] the judge that Mr. Madera was starting a new job and she was making an appearance on his behalf.

- Oppos., 3:26-4:2.

After Plaintiff's further comments to the Judge, in the words of the Complaint:

> In response Judge George Assad then told the Plaintiff that she would be held in custody until Mr. Madera came to court.

- Complaint, ¶ 13, 4:4-6. The Opposition further repeats the factual allegations:

> Judge Assad then told Ms. Chrzanowski that she would be held until Mr. Madera came to court. Thereafter, Ms. Chrzanowski was held for over two (2) hours in a holding cell until Mr. Madera was brought to court by another City Marshall.

- Oppos., 4:7-9. See also Complaint, ¶ 13, 4:8-9.

On these facts, with these allegations, Defendant SAAVEDRA respectfully submitted that no federal claim may be stated against the moving Defendant in his individual capacity because both a judge and those acting to perform duties directly related to the judicial function are protected by absolute judicial immunity and absolute quasi-judicial immunity. Further, Defendant argued that both the similar absolute judicial immunity under state law and the explicit Nevada statutory immunity bar all state law claims against this defendant.

Finally, because a claim against a municipal official – here, Las Vegas City Marshal SAAVEDRA – in an official capacity is the same as a claim against the municipality, Movant argued any official capacity claim against SAAVEDRA must be dismissed as redundant to that same claim asserted directly against the City of Las Vegas.

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

In response, Plaintiff has filed a disjointed and disconnected Opposition which fails to address the significant authorities cited by Movant and which is not well grounded in law, fact or logic.

II. <u>Where All the Claimed Acts Were Directed by the Judge, Arose out of the Normal Judicial Function, Occurred in the Courtroom Around a Case Then Pending Before the Judge, and Directly and Immediately Arose out of a Confrontation with the Judge in His Official Capacity, the Claims Are Barred by Absolute Quasi-judicial Immunity</u>.

The cases cited in Defendant's <u>Motion</u>,[1] and their cited authorities, make clear that the actions at bar were acts taken in a judicial capacity in the exercise of a judicial function and therefore no claim may be pursued. The quoted language from *Mireles* summarized the point:

> We conclude that the Court of Appeals erred in ruling that Judge Mireles' alleged actions were not taken in his judicial capacity. This Court in *Stump* [*v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099 (1978)] made clear that "whether an act by a judge is a "judicial" one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *A judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge.* Waco, who was called into the courtroom for purposes of a pending case, was dealing with Judge Mireles in the judge's judicial capacity.
>
> Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge." *Stump v. Sparkman*, 435 U.S., at 362, 98 S.Ct., at 1108. But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "non-judicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Id.*, at 356, 98 S.Ct., at 1105.

- *Mireles*, 112 S.Ct. 288-289 (some citations omitted; emphasis added).

---

[1] Including *Pierson v. Ray*, 386 U.S. 547, 554-55, 87 S.Ct. 1213, 1217-18 (1967); *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286 (1991); *Valdez v. City and County of Denver*, 878 F.2d 1285, 1287 (19th Cir. 1989); *Martin v. Hendren*, 127 F.3d 720 (8th Cir. 1997); *King v. Thornburg*, 762 F.Supp. 336 (S.D.Ga 1991); and those at <u>Motion</u>, 8, n.3.

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

Page 3 of 18

In her <u>Opposition</u>, Plaintiff seems to miss the point: Plaintiff first asserts that she "was not a party to any action in traffic court, she was not disruptive or in contempt of the Court, nor has she committed a crime" and "Judge Assad's acts were "utter [sic; *ultra*?] vires" because he did not have any jurisdiction over her. <u>Oppos</u>., 2:22-3:4

Yet the facts alleged in the Complaint, as well as those alleged in the <u>Opposition</u> and affidavits, assert and prove that:

- Joshua Madera had a traffic case pending in the Las Vegas Municipal Court;
- the Madera case was actually on the calendar;
- Plaintiff herself appeared at the courthouse for Mr. Madera, at Mr. Madera's request;
- Plaintiff herself learned from court staff that to assist Mr. Madera she would have to personally appear for Madera in the courtroom before the judge and she decided to do so;
- Plaintiff physically entered the courtroom for the appearance on the Madera case;
- the judge took the bench and was physically presiding over the courtroom;
- the Madera case was called;
- Plaintiff responded for Mr. Madera, telling a court official she was appearing for him; and
- Plaintiff took the microphone and addressed the court.

It was then, in the courtroom, with the judge on the bench, presiding over the cases on his calendar, including the Madera case, that Plaintiff was told "she would be held until Mr. Madera came to court." <u>Oppos</u>., 4:7; <u>Oppos</u>., Ex. 1, ¶

However erroneous or ill-conceived holding Plaintiff until Mr. Madera appeared may have been, as a matter of law it was *not* in the "clear absence of all jurisdiction." A judge presiding in a courtroom has clear judicial function jurisdiction over all those in his courtroom, whether defendant, prosecutor,

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

Page 4 of 18

witness, family members, spectator, bailiff or otherwise. Accordingly, absolute judicial immunity and absolute quasi-judicial immunity bar all claims here.

Nothing in the Opposition changes this conclusion.

Without a pinpoint citation,[2] the Opposition asserts that the question centers "upon whether the judge was acting clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction" and cites to *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986). Oppos., 5:21-23. While that Opposition statement lacks clarity, neither the actual pronouncements nor conclusions in *Ashelman* are unclear:

> In [*Stump v.*] *Sparkman*, the Supreme Court held that a judge's ex parte approval of a young woman's sterilization was a judicial act performed within the apparent scope of the court's broad, general jurisdiction. *Id.* at 357-64, 98 S.Ct. at 1105-09.
>
> Other circuits have expanded *Sparkman's* analysis. To determine if a given action is judicial, those courts focus on whether (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.

- 793 F.2d 1075-1076.

> *These factors are to be construed generously in favor of the judge* and in light of the policies underlying judicial immunity.

- 793 F.2d 1076 (emphasis added).

> Where not clearly lacking subject matter jurisdiction, a judge is entitled to immunity even if there was no personal jurisdiction over the complaining party. Jurisdiction should be broadly construed to effectuate the policies supporting immunity.

- *Id.* (citations omitted).

The Ninth Circuit in *Ashelman* went on to "broadly construe the scope of immunity," to conclude that the Circuit's prior decisions "construed the immunity doctrines too narrowly" and clearly held that even "a conspiracy

---

[2] LR 7-3(b) provides that "[a]ll citations shall include the specific page(s) upon which the pertinent language appears."

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

between judge and prosecutor to predetermine the outcome of a judicial proceeding" did not pierce the judicial and prosecutorial immunities. 793 F.2d 1078. *Ashelman* concluded with a ringing declaration for broad immunity:

### CONCLUSION

Our examination of the doctrines of judicial and prosecutorial immunity convinces us to construe more broadly the availability of immunity. Although a few may suffer because of the loss of seemingly meritorious claims against judges and prosecutors, the policies in support of immunity can only be fulfilled if immunity is freely granted and the exceptions are few and narrowly drawn.

- 793 F.2d 1079.

The Opposition's citation to *Ashelman* is presented under the broad rubric that "Absolute Immunity Does Not Protect Criminal Acts." Oppos., 5:7-8. Although the point is not developed further until the Opposition's erroneous citation to the withdrawn *Jimenez* case (Oppos., 9:6-10), Movant's authority already presented debunks the assertion. *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108 (1983) (Motion, 4:26-5:9) not only explained the role of immunity in § 1983 actions, it explicitly applied the immunity to immunize alleged criminal conduct from § 1983 scrutiny.

In *Briscoe* a convicted person asserted a constitutional violation for "committing perjury in the criminal proceedings leading to his conviction." 103 S.Ct. 1111. *Briscoe* granted immunity to the alleged perjurious officer: the case established absolute witness immunity under § 1983. 103 S.Ct. 1120.

Plaintiff follows (Oppos., 5:28-6:24) with a disjointed assortment of sentence fragments and phrases apparently centered on the administrative function exception to judicial immunity. *Meek v. County of Riverside*, 183 F.3d 962 (9th Cir. 1999) (Oppos., 6:9-7:1) did (at 965) repeat that judicial immunity should not be found for non-judicial actions nor for actions, judicial in nature, but which are taken in the absence of all jurisdiction. The actions here *were* judicial in nature and *were not* in the absence of all jurisdiction.

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

*Meek* dealt with a claim of constructive termination in retaliation for First Amendment activity. It was brought by an appointed court commissioner against the appointing authorities, including the municipal judges. *Meek* simply found that the personnel decisions of a court were administrative, not judicial in nature. (Also see *Meek*, 183 F.3d at 967 n. 2 for cases finding particular acts judicial or non-judicial in nature.) Of course, no question involving "administrative personnel decisions" is at issue here.

*Meek* did cite to both *Mireles, supra*, and *Schucker v. Rockwood*, 846 F.2d 1202 (9th Cir. 1988) (*Meek*, 183 F.3d 965-66) as the Opposition asserts (6:15-19) but neither case assists Plaintiff in these facts. *Mireles* was discussed in detail in the Motion, 6:1-7:10; *Schucker* has nothing that rebuts this motion to dismiss. Indeed, the case repeats the obvious point that even

> [g]rave procedural errors or acts in excess of judicial authority do not deprive a judge of this immunity.

- 846 F.2d 1204.

Mr. Schucker had been the recipient of a motion to distribute his military retirement pay as community property pursuant to a judgment of dissolution of marriage. 846 F.2d 1204. The motion had been denied; Mrs. Schucker appealed; and despite the pendency of the appeal (which arguably deprived the trial court of further jurisdiction), the judge found Schucker guilty of contempt for failure to comply with the distribution order. *Id.* The Ninth Circuit found that even if the judge had misinterpreted a statute and erroneously exercised jurisdiction and thereby acted in excess of his jurisdiction, his acts were still not done "in the clear absence of jurisdiction." *Id.* Nor, at least to a bailiff not required to sit as an appellate court to review his judge's decisions, were the actions here.

*Harper v. Merckle*, 638 F.2d 848, 850 (5th Cir. 1981) (cited in the Opposition at 6:25–7:1) specifically stated there were "unusual facts [in] this

Page 7 of 18

case": indeed, there were. 638 F.2d 850-51. The plaintiff in the case had entered the Florida County Courthouse to give a support payment check to his ex-wife, then secretary to a Judge Coe. Plaintiff entered an office, and spoke with a secretary to Judge Merckle. When his ex-wife couldn't be located, he gave a check to the secretary. *Id.*

Judge Merckle had been in his office where he overheard some of the conversation. *Id.* He directed the secretary to obtain the closed divorce file, examined it (he thought there was a contempt citation therein) and engaged the plaintiff ex-husband in a conversation over his address. Seated at his secretary's desk, Judge Merckle told plaintiff to raise his right hand to be sworn in. *Id.* In essence, matters thereafter deteriorated, Harper left, was seized, and Judge Merckle immediately began a "contempt" hearing in *his office* with a court reporter. 638 F.2d 851-52. In the "hearing", Judge Merckle was the "complaining witness, prosecutor, factfinder and judge." *Id.*, 852. The ex-husband Harper was jailed at the conclusion, and remained in jail for three days. *Id.*, 853-54.

In *those* facts, absolute judicial immunity was properly rejected: the factors cited in *Stump v. Sparkman* (factors applied in *Meek*) simply could not support immunity. There was no case whatsoever pending in the court so the controversy could not possibly be centered around any pending matter. *Id.*, 859. There was certainly no visit to the judge in his official capacity. *Id.*

Yet all four *Meek* factors are obviously met in *this* case and, indeed, were met in the earlier Fifth Circuit case cited in *Stump* and distinguished in *Harper*, *McAlester v. Brown*, 469 F.2d 1280 (5th Cir. 1972). In *McAlester* an elderly couple entered the courthouse where their son was to stand trial on criminal charges, and went to the judge in chambers to see when the trial would start. 469 F.2d 1281. The judge lost his temper at their presence, ordered them out

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

and told them they'd be thrown in jail; he then had a deputy arrest Mr. McAlester and take him to jail. *Id.*

Despite the plaintiff's "central thesis" in that case that the judge "overreacted and improperly exercised an autocratic, elephant-gun power to relieve his personal, non-judicial annoyance with a mosquito-sized problem," an overreaction caused by "Judge Brown's allegedly disagreeable disposition, testy character, and volatile temper" (469 F.2d at 1281-82), the Fifth Circuit found absolute immunity. *Id.*, 1282-83. Further, the court determined that Texas gave similar immunity to judges and therefore the pendent state claims were dismissed as well. As the court concluded:

> We note in concluding that the opening of any inroads weakening judicial immunity could have the gravest consequences to our system of justice. Every judicial act is done "under color of law;" absent the doctrine, every judicial error affecting a citizen's rights could thus ultimately subject the judge to section 1983 liability. * * * Even though there may be an occasional diabolical or venal judicial act, *the independence of the judiciary must not be sacrificed one microscopic portion of a millimeter, lest the fears of section 1983 intrusions cow the judge from his duty.*

- 469 F.2d 1283 (emphasis added).

The Opposition continues with assertions that Plaintiff was not disruptive, did not use profanity, could simply have been escorted from the courtroom and there was no right to handcuff and lock her in a cell for two hours. Oppos., 7:11-15.

Yet again Plaintiff misses the point: her Complaint alleges the judge told her "she would be held in custody until Mr. Madera came to Court" (Compl., ¶ 13, 4:4-5); her affidavit states "Judge Assad told me that I would be held until Mr. Madera came to court." Ex. 1 to Oppos., ¶ 11. Those are the facts alleged and, as Plaintiff agrees,[3] the judge's intent is irrelevant.

---

[3] Opposition, 5:18-6:1; see *Stump*, 98 S.Ct. 1099, 1105, judge will not be deprived of immunity because the action he took was done maliciously, etc.

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

Page 9 of 18

Whether Plaintiff was or was not disruptive, or whether her version of the facts is accurate, is simply irrelevant. The standards set in *Stump* and *Meeks* are met. This was a judicial act and the marshal effectuating that judicial act is entitled to absolute quasi-judicial immunity. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 98 S.Ct. 1099, 1105.

The Opposition continues by asserting Plaintiff was "not a losing party" nor "a party at all." Oppos., 7:20. Again, the point is simply irrelevant. The case in which she appeared was on the calendar and had been called. She was in the courtroom, she appeared for the party and confronted the judge in his official judicial capacity.

It is correct that there was no written judicial order (Oppos., 7:23), but neither *Coverdell v. Dept. of Social & Health Services*, 834 F.2d 758 (9th Cir. 1987) nor any other cited case requires a written order. As *Coverdell* noted, "[t]he fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." 834 F.2d 765.[4]

The Opposition (7:27-8:2) next asserts that officers only have "qualified immunity for the manner in which they choose to enforce the Court order,"

---

[4] Not discussed in the Opposition is *King v. Thornburg*, 762 F.Supp. 336 (S.D.Ga. 1991) (Motion, 12:17-14:5). There the marshals involved were held entitled to absolute quasi-judicial immunity, as well as qualified immunity, where they took a criminal defense attorney into custody in Brunswick, Georgia, "handcuffed and waist chained" him and transported him to Savannah. 762 F.Supp. 338. The Marshals Service "body chains" (handcuffs and waist chains) policy (for *every* person taken into custody) was found fully reasonable (id., 339-340); the court noted that the Marshals Service should not be required to risk safety by being required to make subjective judgments as to an arrestee's potential for violence. Id. The ordinary handcuffs used here (Compl. ¶ 13, 4:14-15) were obviously reasonable.

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

1 citing *Richman v. Sheahan*, 270 F.3d 430, 435 (6th Cir. 2001) cert. den. 122 S.Ct. 1439 (2002).

First, such an assertion seemingly *concedes* the discretionary act immunity under state law and state claims must therefore be dismissed.

Second, the Sixth Circuit *Richman* case is hardly comparable and does nothing to undermine *King, Martin v. Hendren*, 127 F.2d 720 (8th Cir. 1997) (Motion, 10:19-11:26) and the Ninth Circuit decisions cited by Movant. In *Richman*, fourteen sheriff's deputies attacked the physically disabled Jack Richman, present as a witness to testify for his mother on a traffic citation. 270 F.3d 433. The fourteen attacked him, forced him to the floor, sat on and handcuffed him. *Id.* His mother was restrained by four other deputies. *Id.* Neither attempted resistance; Jack, while on the floor, emptied his bladder and bowels, and appeared to have stopped breathing. Id., 433-34. Transported to a hospital, he was pronounced dead. *Id.*, 434.

Two of the three judges affirmed the denial of absolute immunity for the sheriff's deputies. Even on those horrific facts, the third circuit judge vigorously dissented because immunity applied:

> The *Martin v. Hendren* case, like ours, * * * involves police officers under the immediate direction and supervision of a judge, following the judge's orders to restore or maintain order in the court instanter, doing precisely what they are sworn to do. Indeed, it is to do this job of maintaining order at the bidding of the judge that is the very reason they are present in the courtroom.

- 270 F.3d 443.

> A decision reversing the trial court in the instant case is, in my opinion, both logical and necessary, if courtroom decorum is to be preserved at all. To suggest that the judge is absolutely immune from liability for requiring the bailiffs take a person into custody for refusing the court's direction *while exposing the bailiff to liability* has implications that go beyond the present case. A probable response (if it could be done without the bailiff being held in contempt) would be to suggest that the judge, cloaked with his or her immunity, step down and preserve order himself.

- 270 F.3d 444 (Bauer, Cir. J., dissenting; emphasis added).

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

Finally, unlike the facts in *Richman*, it is clear that qualified immunity would apply in this case in any event. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2158 (2001). Immunity for reasonable mistakes as to the legality of their actions also applies in excessive force actions. *Id.*, 121 S.Ct. 2158-59. "[I]n addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable." *Id.*, 2159 (excessive force case; finding immunity for MP who at San Francisco's Presidio "gratuitously violent[ly] shoved" the knee-high leg-braced peaceful protestor into a van upon his arrest).

No bailiff may be faulted for the acts alleged in this Complaint: immunity, absolute or qualified, clearly bars this action.

III.  **All Claims Against Municipal Court Marshal R. SAAVEDRA in His Official Capacity must Be Dismissed.**

Movant has further respectfully argued that the redundant, duplicate "official capacity" claim against marshal R. SAAVEDRA must be dismissed.[5] Motion, 15:2-16:6.

The Opposition simply does not treat this issue. Movant asserted that a claim against a municipal official in an official capacity is tantamount to a claim against the entity; it is not necessary to bring "official-capacity" actions against *local* government officials. *Kentucky v. Graham*, 473 U.S. 159, 168 n. 14, 105 S.Ct. 3099, 3106 n. 14 (1985). Accordingly, where this § 1983 plaintiff has sued both the local entity *and* the local official (marshal R. SAAVEDRA) in his "official capacity", the court should dismiss the official-capacity claim as

---

[5] As noted in the Motion, the Complaint purports to name marshal R. SAAVEDRA in his "official capacity" as well as individually. Complaint, ¶ 7.

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

Page 12 of 18

redundant. None of the cited cases are discussed or distinguished in the Opposition.

Two paragraphs of the Opposition appear under the rubric of "Claims Against Marshall Saavedra" but do not respond to the argument. Oppos., 8:3-14. Movant does not contest that, in a proper case not barred by any immunity, a person acting under color of state law who commits a constitutional violation may be found liable in a § 1983 action. Nor does movant contest the truism that there is no respondeat superior liability under § 1983 and that, where a constitutional deprivation is inflicted by the execution of a municipal government policy or municipal custom, there may be liability for the municipality.

All that Movant has asserted is that any official capacity claim against SAAVEDRA is duplicative and redundant since the City itself has been sued.

The Opposition next asserts that "when the officer's conduct is 'inextricably intertwined' the Marshall's action is the basis for Monel liability against the city." Oppos., 8:12-14. This statement is inaccurate, confusing, does not respond to the argument made and cites to a decision dealing with a separate issue entirely. Clarification, regrettably, requires an extensive detour.

It is correct that if SAAVEDRA's (or the Judge's) actions do not amount to a constitutional violation, there may be no claim against the City. However, even if there were a violation to be found, there would still be no claim against the City without proof that a City policy or custom caused the violation, or that an individual who directly caused the injury was himself a policymaker for the City and therefore, by his actions, made and enforced a policy.

Plaintiff's citation of *Huskey* [not "*Hushey*"] *v. City of San Jose*, 204 F.3d 893 (9th Cir. 2000) (Oppos., *id.*) to support her brief's "inextricably intertwined" statement is simply wrong.

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

Page 13 of 18

In *Huskey* the question giving rise to the only use of the "inextricably intertwined" language was in consideration of a city's "interlocutory appeal under the doctrine of pendent appellate jurisdiction." See 204 F.3d at 904-06. In *Huskey*, the basic claim was for a constructive discharge in retaliation for exercise of First Amendment rights. See 204 F.3d 898. The court first found no constitutional violation (204 F.3d 900), added that no adverse employment action nor deprivation of a property interest was alleged or shown (204 F.3d 900-902), and then considered the interlocutory appeal question.

The individual defendants (the City Attorney and two others) had a right to an interlocutory appeal of the trial court's denial of their qualified immunity claim; because a municipality is not entitled to the defense of qualified immunity, it had no direct interlocutory appeal right. However, because in that case the plaintiff asserted the key individual defendant was a city policymaker, city liability would depend upon the existence of a constitutional violation by its policymaker. (No other basis was asserted.) Without a violation of federal constitutional rights by the individual defendant in her role as a city policymaker, there could be no city liability. *Id.*, 906. Accordingly, pendent appellate jurisdiction was exercised and all the § 1983 claims were dismissed. *Id.*

The <u>Opposition</u>'s assertion and *Huskey* have nothing to do with the present issue: the redundant "official capacity" claim against SAAVEDRA must be dismissed.

//

//

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

IV. <u>All State Law Claims must Be Dismissed as Well</u>.

Finally, Movant sought dismissal of all state law claims as well.[6] <u>Motion</u>, 16:7-18:20. The <u>Opposition</u> responds in two paragraphs (<u>Oppos</u>., 8:24-9:10) which address neither the supplemental jurisdiction claim (where all federal claims fail, supplemental jurisdiction need not be exercised over supplemental state law claims) nor the similar absolute judicial and quasi-judicial immunity defenses under state law.

The <u>Opposition</u> cites to NRS 41.032, and asserts that the statute does not protect SAAVEDRA from individual liability for "criminal or intentional wrongs", and adds: "See, <u>State Dept. of Human Resources v. Jimenez</u>, 113 Nev. 356, 935 P.2d 274 (1997) rev. on other grounds; holding that the state can be liable...." <u>Oppos</u>., 9:7-10.

The *Jimenez* opinion was not "rev. on other grounds" and it has no holding: the opinion was withdrawn in its entirety. See 113 Nev. 356 at 357 ["Opinion Withdrawn, ... 113 Nev. 735, 941 P.2d 969 (1997)"]; 113 Nev. 735 ("former opinion withdrawn"), 736 ("we withdraw our prior opinion..."); 941 P.2d 969 (same). The opinion simply has no legal existence and no holding so it cannot support Plaintiff in any manner.

Further, *Ortega v. Reyna*, 114 Nev. 55, 62, 953 P.2d 18 (1998) (<u>Motion</u>, 18:15-18) rebuts any claim that NRS 41.032 does not protect against liability for intentional wrongs. On review of a summary judgment motion, the Nevada Supreme Court in *Ortega* determined that the decision to stop a motorist, and

---

[6]The <u>Opposition</u> also briefly asserts that no "heightened pleading standard may be applied." <u>Oppos</u>., 8:15-22. That response does not address the intra agency problem or multiplicity of parties requirement nor the need to present the factual specificity required for a claim of conspiracy generally. The citation to "<u>Hampton v. Hanrahan</u>, 600 F.2d 600 (7th Cir. 1979)," a 67-page decision without a specific page designation in accord with LR 7-3(b) does not advance Plaintiff's cause. *Hanrahan* was a post-trial decision which did not address pleading issues.

Page 15 of 18

the decision to arrest a motorist, were discretionary acts. 114 Nev. at 62, 953 P.2d at 23. In *Ortega* the plaintiff brought claims against the defendant Nevada Highway Patrol trooper for the intentional torts of false arrest, false imprisonment, intentional infliction of emotional distress and malicious prosecution. 114 Nev. at 56, 953 P.2d at 19.[7] Clearly NRS 41.032 applies to intentional conduct.

No argument or authority cited by the <u>Opposition</u> provides lawful rebuttal to Movant's position: all claims, federal and state, are barred.

V. <u>Conclusion: the Complaint and All of its Claims must Be Dismissed as to Marshal R. SAAVEDRA in Both His Individual and "Official" Capacities</u>.

The Motion and this Reply demonstrate that it is not only judges who are protected by absolute immunity under the law. Persons acting to perform duties directly related to the judicial function – such as a marshal carrying out the judicial order to hold the plaintiff in custody – are protected by absolute quasi-judicial immunity.

Under the standard for immunity, the acts alleged in the Complaint were clearly judicial in nature: the act of the judge, dealing with spectators and litigants who come before him, is a normal judicial function; the events clearly occurred in the judge's chambers and courtroom; the controversy centered around a case then pending before and called by the judge; and the events obviously arose directly and immediately out of a confrontation with the judge in his official capacity.

It remains true that applying judicial immunity to spare judges who *give* orders, yet punish the marshals who obey them, is simply unfair. Further, marshal SAAVEDRA cannot be held to know more about the law and limitations on the authority of a municipal judge than the municipal judge

---

[7]Perhaps of importance, "Potter Law Offices" represented plaintiff Ortega. 114 Nev. 55, 953 P.2d 18.

Page 16 of 18

1 himself, nor may he be required to sit as a pseudo-appellate court to scrutinize his judge's orders.

Accordingly, no federal claim may be stated on these facts against this defendant in his individual capacity. Because the absolute quasi-judicial immunity under state law is identical and the explicit Nevada statutory immunity bar all state claims against this defendant, they, too, must be dismissed.

Finally, the "official capacity" claims against municipal court marshal R. SAAVEDRA must be dismissed and, because all the federal claims must be dismissed, the state claims should further be dismissed under § 1367(c)(3).

DATED this 29th day of September, 2005.

LAW OFFICES OF THOMAS D. BEATTY

_____
THOMAS D. BEATTY, Esquire
601 Bridger Avenue
Las Vegas, NV 89101
Telephone: (702) 382-5111
Facsimile: (702) 382-2892
Attorneys for Defendant
Marshal R. SAAVEDRA

LAW OFFICES
THOMAS D. BEATTY
601 EAST
BRIDGER AVENUE
LAS VEGAS,
NEVADA 89101
(702) 382-5111

Page 17 of 18

## CERTIFICATE OF MAILING

I, Linda L. Snyder, an employee of THE LAW OFFICES OF THOMAS D. BEATTY, hereby certify and declare that I did, on the 29th day of September, 2005, place a true and correct copy of the above and foregoing DEFENDANT R. SAAVEDRA'S REPLY IN SUPPORT OF MOTION TO DISMISS in the United States Mail, postage prepaid, addressed to:

CAL J. POTTER, III, Esquire
Potter Law Offices
1125 Shadow Lane
Las Vegas, NV 89102
Attorneys for Plaintiff

WALTER CANNON, Esquire
THOMAS DILLARD, Esquire
Rawlings, Olson, Cannon, Gormley & Desruisseaux
9950 West Cheyenne
Las Vegas, Nevada 89129
Attorneys for Defendant
Judge George Assad

PHILIP R. BYRNES, Esquire
Deputy City Attorney
City of Las Vegas
400 East Stewart, 9th Floor
Las Vegas, NV 89101
Attorneys for Defendant
City of Las Vegas

_/s/ Linda L. Snyder_
An Employee in the Law Offices
of Thomas D. Beatty